IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ROBERT C. WEDDINGTON, )
      Plaintiff, )
       )
v. ) Civil Action No. 3:23cv267 (RCY)
       )
CENTRAL EXPRESS, LLC, )
      Defendant. )
       )

**MEMORANDUM OPINION**

*Pro se* Plaintiff Robert C. Weddington brings this action for damages arising from the alleged conversion of his truck, a 1999 Freightliner Classic XL, and alleged subsequent insurance fraud. Jurisdiction is appropriate based on diversity of citizenship. The matter is presently before the Court on various, iterative motions filed by Plaintiff: a Motion to Appoint Counsel (ECF No. 43); a Motion for Default Judgment (ECF No. 44); a Motion for Docket Entry Request Inquiry/Default [and] Appoint Counsel ("Renewed Motion to Appoint Counsel," ECF No. 52); a Motion to Amend (ECF No. 53);[1] another Motion to Appoint Counsel (ECF No. 54), and another Motion for Default Judgment (ECF No. 56). The Court dispenses with oral argument because the facts and contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J).

Finding that Plaintiff has failed to plead a viable private fraud claim, and further that the facts clearly establish that the relevant statute of limitations has expired for Plaintiff's conversion claim—a deficit no amount of re-pleading or assistance from counsel could cure—the Court will deny Plaintiff's Motions to Appoint Counsel (ECF Nos. 43, 52, 54), deny the Motions for Default

---

[1] Though simply filed as an "Amendment," Plaintiff cannot amend at this stage without leave of court (having already amended once by right), *see* Fed. R. Civ. P. 15; ECF No. 3, and thus the Court construes this as a Motion to Amend.

Judgment (ECF Nos. 44, 52, and 56), deny the Motion to Amend (ECF No. 53), and dismiss the action pursuant to 28 U.S.C. § 1915.

### I. PROCEDURAL HISTORY

Plaintiff, appearing *pro se* and without paying any filing fee, filed his initial Complaint in the United States District Court for the District of Maryland ("Maryland District Court") on April 19, 2021, in which he named "National Indemnity Company" and "Company MC" as defendants. ECF No. 1. The Maryland District Court entered an order directing Plaintiff to either pay the full filing fee or file a motion for leave to proceed in forma pauperis ("IFP Application"). ECF No. 2. In response, Plaintiff filed an Amended Complaint changing the listed defendants' names to "National Indemnity Insurance" and "Central Express LLC," ECF No. 3, and a "Supplement to the Amended Complaint," ECF No. 4, which is a *pro se* "Complaint for a Civil Case" form elaborating on Plaintiff's claims. Plaintiff also filed the requested IFP Application. ECF No. 5. On June 17, 2021, the Maryland District Court issued a Memorandum and Order granting Plaintiff *in forma pauperis* ("IFP") status pursuant to 28 U.S.C. § 1915 and ordering the docket be updated to remove Company MC, add Central Express, LLC, and amend "National Indemnity Company" to "National Indemnity Insurance Company" ("NIIC"). ECF Nos. 6, 7. The Court further ordered Plaintiff to show cause why the action should not be dismissed for lack of subject matter jurisdiction and/or res judicata and collateral estoppel. *Id*. Plaintiff then filed a Motion to Appoint Counsel, ECF No. 8, and a Response to the Show Cause Order, ECF No. 9.

On July 9, 2021, the Maryland District Court entered a Memorandum and Order denying Plaintiff's Motion to Appoint Counsel and dismissing the Amended Complaint, ruling that Plaintiff's claims against both Defendants were barred by both the Maryland statute of limitations for breach of contract claims and the doctrine of collateral estoppel. ECF Nos. 10, 11. Plaintiff

2

appealed this decision to the Fourth Circuit Court of Appeals. ECF No. 12. On February 8, 2022, the Fourth Circuit issued a Judgment affirming the court's dismissal as to NIIC but reversing and remanding as to Central Express, finding that "it does not appear on the face of [Plaintiff's] complaint that the statue of limitations would bar this action against Central Express, LLC" and that collateral estoppel likewise did not apply. ECF No. 15.

On February 22, 2022, Plaintiff filed a combined Motion to Appoint Counsel and Motion for Summary Judgment. ECF No. 16. The action was then consolidated with another pending District of Maryland case, *Weddington v. Liberty Mutual Insurance Company*, *see* Order, ECF No. 17, the complaint for which was docketed as a Supplemental Complaint in this case, ECF No. 18. Following the issuance of the Fourth Circuit's mandate, the Maryland District Court issued an order directing the Clerk to reopen the case, denying the Motion for Appointment of Counsel/Motion for Summary Judgment, and directing the Clerk to provide Plaintiff with copies of summons forms. ECF No. 20. Plaintiff then filed a so-called Motion for Record Correction, ECF No. 21, objecting to the consolidation of his cases, and another Motion for Summary Judgment, ECF No. 22.

On March 10, 2022, the Maryland District Court issued an Order denying Plaintiff's Motion for Record Correction and Motion for Summary Judgment and dismissing Plaintiff's claims against Liberty Mutual Insurance Company, leaving only Central Express as a defendant. ECF No. 23. After some confusion regarding the address for service and various corrective filings, *see* ECF Nos. 25–36, the United States Marshals Service ("USMS") ultimately returned the executed summons for Central Express, LLC, on October 31, 2022, showing that Central Express was served[2] via Certified Mail delivered to 161 Hawks Nest Ct., Richmond, Virginia,

---

[2] By Order of the District Court for the District of Maryland, USMS served Central Express with copies of the following, which the District Court deemed to collectively comprise the operable Complaint: ECF Nos. 1

23219. ECF No. 37. Plaintiff filed a Motion for Default Judgment on December 14, 2022, after the time for Defendant to appear had lapsed. ECF No. 38. Plaintiff then filed a Motion for Summary Judgment by Default on February 15, 2023. ECF No. 39. The Clerk entered Defendant Central Express's default on February 16, 2023, ECF No. 41, and published a Notice of Default as to Central Express that same day. ECF No. 42.

On March 14, 2023, Plaintiff filed another Motion to Appoint Counsel, ECF No. 43, and followed this with a combined/renewed Motion for Default Judgment and Motion to Appoint Counsel on April 7, 2023. ECF No. 44. On April 10, 2023, the Maryland District Court issued an Order directing Plaintiff to show cause why the action should not be transferred to Virginia absent any discernable nexus between Maryland and his claims. ECF No. 45. Plaintiff filed his response on April 14, objecting to the transfer but conceding that all relevant damage occurred in Virginia. ECF No. 46. Over Plaintiff's objection, the Maryland District Court transferred the action to the Eastern District of Virginia, Richmond Division, on April 24, 2023, at which point it was assigned to the undersigned. *See* ECF Nos. 47, 48.

On September 20, 2023, this Court denied the Motion for Summary Judgment by Default, ECF No. 39, as premature, given its filing before the Clerk entered default as to Central Express. Order, ECF No. 51. The Court then received a status inquiry and Renewed Motion to Appoint Counsel, ECF No. 52, which Plaintiff appears to have mailed prior to the Court's issuance of the September 20 Order. On October 6, 2023, the Court received Plaintiff's Motion to Amend, ECF No. 53, and another Motion to Appoint Counsel, ECF No. 54. On December 21, 2023, the Court received yet another Motion for Default Judgment, ECF No. 56, accompanied by an Affidavit by

---

(original Complaint), 3 (Amended Complaint), 4 (Supplement to the Amended Complaint) and 18 (Liberty Mutual Complaint). *See* Mar. 3, 2022 Order, ECF No. 20. The claims set out in ECF No. 18 only pertain to now-dismissed Defendant Liberty Mutual, however, and on that basis the Court does not engage with that document in laying out the facts relevant to the present motions, *infra*.

4

Plaintiff, ECF No. 57, setting out the particulars of Plaintiff's claim against Central Express and of Plaintiff's damages. The Court is finally prepared to take up Plaintiff's motions.

## II. FACTUAL ALLEGATIONS

Plaintiff was separated from his 1999 Freightliner Classic XL truck sometime in 2015, when he was arrested in Virginia. Compl. 1,[3] ECF No. 1; Md. D. Ct. June 17 Mem. Op. ("First Md. Op.") 5, ECF No. 6.[4] The truck was reportedly towed to an impound lot but then went missing. First Md. Op. 5. Plaintiff reported the truck to NIIC as stolen, but NIIC denied the claim in 2016, informing Plaintiff that his claim was not covered. *Id.*; *see also* Mot. Amend Ex. 1, at 5 (2016 NIIC denial letter), ECF No. 53-1. Sometime in 2018 or early 2019, Lori Nedd, a friend of Plaintiff, received call from Virginia State Police regarding Plaintiff's truck having been found abandoned. Compl. 1; Suppl. Am'd Compl. 7, ECF No. 4. Nedd, acting on behalf of Plaintiff, contacted police and a tow company to reclaim the truck and have it towed back to Maryland. Compl. 1. According to Nedd, two unknown Black males tried to stop the retrieval of Plaintiff's truck; one of them tried to remove the company information on the side of the truck but was unsuccessful. Compl. 1. The truck had been stripped of parts by the time it was located and recovered by Nedd. Compl. 1.

Plaintiff and Nedd searched for the company whose name, MC number,[5] and USDOT number[6] now appeared on Plaintiff's truck, and identified Central Express LLC ("Central

---

[3] Throughout this Memorandum Opinion, the Court employs the pagination assigned by the CM/ECF system, and not the pagination appearing on original documents.

[4] The Court may take judicial notice of its own records. *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990).

[5] Companies that, for a fee or other compensation, transport in interstate commerce federally regulated commodities owned by others are required to have interstate Operating Authority (MC number) in addition to a United States Department of Transportation ("USDOT") number. *See* Federal Motor Carrier Safety Administration, "Get Authority to Operate (MC Number)" (*available at* https://www.fmcsa.dot.gov/registration/get-mc-number-authority-operate).

[6] Companies that operate commercial vehicles transporting passengers or hauling cargo in interstate

Express"). Compl. 1; Am'd Compl. 1, ECF No. 3; Mot. Appoint Counsel Ex. 1, ECF No. 43-1 (photo of recovered truck). Plaintiff and Nedd further identified that this company was associated with NIIC Policy #70TRS058168.[7] Compl. 1. Plaintiff asserts that Central Express was using his truck without authorization and left it "stripped and abandoned." Am'd Compl. 1.

On April 6, 2021, Plaintiff tried to file a new insurance claim with NIIC under the policy number listed above, *see* Am'd Compl. 1, seeking replacement of his truck; he received a letter in return listing Central Express as the "Insured," himself (Robert Weddington) as "Claimant," and a "Date of Loss" of November 1, 2018. Am'd Compl. Ex. 1, ECF No. 3-1. Plaintiff interpreted the letter as suggesting he is affiliated with Central Express and that there had been a claim filed on November 1, 2018, prior to his April 6, 2021 claim letter. Am'd Compl. 1. He alleges that this letter constitutes proof that NIIC and Central Express "committed fraud with [his] truck in [his] name," since he did not file any claim on November 1, 2018 and he has "never been a part of Central Express nor did [he] lease [his] truck to them." Suppl. Am'd Compl. 7. Plaintiff initiated this action after receiving that letter.

### III.  APPLICABLE LAW

Sitting in diversity, this Court applies the substantive law of the state where the court sits: here, Virginia.[8] *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Castillo v. Emergency Med.*

---

commerce must be registered with the Federal Motor Carrier Safety Administration (FMCSA) and must have a USDOT Number. Additionally, some states require USDOT numbers even if the truck only operates in intrastate commerce. See Federal Motor Carrier Safety Administration, "Do I Need a USDOT Number?" (*available at* https://www.fmcsa.dot.gov/registration/do-i-need-usdot-number).

[7] This is distinct from Plaintiff's own NIIC Policy number, #70TRS048722, under which he appears to have attempted to file his 2016 claim. *See* Compl. 1; Md. D. Ct. Mem. Op. 5.

[8] The Court acknowledges that the matter was originally filed in Maryland federal court and prior analyses were conducted according to substantive Maryland state law. *See*, *e.g.*, Second Md. Op. 3 (analyzing Maryland statute of limitations). However, upon the dismissal of NIIC from the action, the case was transferred to this Court because the Maryland District Court determined that there was no nexus to Maryland and venue was proper only in Virginia. *See* Transfer Order, ECF No. 47 (directing transfer "pursuant to 28 U.S.C. § 1404"). Even though, in cases of diversity jurisdiction, transfer pursuant to § 1404 often requires the transferee court to continue to apply the state law of the transferor court, *see Van Dusen v. Barrack*, 376 U.S. 612, 638–40 (1964), the present circumstances—

*Assocs.*, 372 F.3d 643, 646 (4th Cir. 2004). This includes both Virginia statutes and Virginia case law. *Adams v. Am. Optical Corp.*, 979 F.3d 248, 255 (4th Cir. 2020). The Fourt Circuit treats Virginia's statutes of limitations as substantive when reviewing diversity cases. *Id.*

## IV. ANALYSIS

The Court reads Plaintiff's various motions to encompass three general requests for relief, specifically: (1) the appointment of counsel, (2) default judgment, and (3) leave to supplement—i.e., amend—his Complaint(s) with new facts and parties. The Court addresses each of these requested forms of relief in turn, all while considering the matter through the specific lens of the *in forma pauperis* statute, 28 U.S.C. § 1915.

### A. Appointment of Counsel

A federal district court's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is discretionary and may be considered where an indigent claimant presents "exceptional cases." *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Mallard v. U.S. Dist. Ct.*, 490

---

where neither Plaintiff nor Defendant initiated the change of venue and where venue and personal jurisdiction were deficient in Maryland—appear to fall within one of the exceptions anticipated in *Van Dusen* and to counsel alternative treatment as either a transfer pursuant to 28 U.S.C. § 1406(a) (to cure venue defect) or transfer pursuant to 28 U.S.C. § 1631 (to cure deficiency in jurisdiction). *See Van Dusen*, 376 U.S. at 639–40 ("[W]e do not and need not consider whether in all cases § 1404(a) would require the application of the law of the transferor, as opposed to the transferee, State. We do not attempt to determine whether, for example, the same considerations would govern if . . . it was contended that the transferor State would simply have dismissed the action on the ground of *forum non conveniens*.").

The Maryland District Court dismissed Plaintiff's claims against NIIC based on theories of res judicata and claim splitting, essentially finding that those claims were an impermissible attempt to re-litigate matters that were (or should have been) already decided. First Md. Op. 5–6; Second Md. Op. 2, 4 (*aff'd in relevant part*, No. 21-7073 (4th Cir. Feb. 8, 2022) ("We affirm the dismissal of the complaint against National Indemnity Insurance Company for the reasons stated by the district court.")). The matter was therefore not properly filed in Maryland to begin with, because without the res judicata-barred claims, there was no Maryland connection on which to predicate venue. Moreover, the Maryland District Court's subsequent transfer analysis omits recognition of the fact that personal jurisdiction over Defendant Central Express also appeared to be lacking in Maryland. Contrary to instances of § 1404 transfer for convenience, transfers to cure lack of venue (§ 1406) or lack of jurisdiction (§ 1631) result in the application of the transferee (recipient) court's state law. *Ross v. Colo. Outward Bound Sch., Inc.*, 822 F.2d 1524, 1527 (10th Cir. 1987) (comparing choice of law implications of transfer pursuant to §§ 1404, 1406, and 1631); 28 U.S.C. § 1631 (explicitly dictating treatment of transferred case "as if it had been filed in" the recipient court). Given the personal jurisdiction elements at play, the Court deems this case to fall within the specific ambit of § 1631 (notwithstanding the Transfer Order's silence on that point). Accordingly, pursuant to § 1631, the Court concludes that "the action . . . shall proceed as if it had been filed in [this Court]," and thus that Virginia state substantive law shall apply.

U.S. 96, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel). "Exceptional cases" may be found in "meritorious cases involving particularly complex factual or legal issues or where a litigant is unable to represent [himself or] herself adequately." *Ferrer v. Garasimowicz*, 2013 U.S. Dist. LEXIS 139939, at *3 (E.D. Va. Sept. 27, 2013); *see also Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008) (noting that a qualifying exceptional case may exist where the litigant "has a colorable claim but lacks the capacity to present it").

Upon review of Plaintiff's various motions seeking the appointment of counsel, the Court finds that Plaintiff has not established, based on the standard set forth above, that the appointment of counsel is justified. The claims involved in Plaintiff's Complaint are not exceptionally complex, and Plaintiff has not demonstrated that he is unable to adequately convey the relevant facts and his legal theories to the Court or otherwise unable to represent himself. Accordingly, Plaintiff's Motions for the Appointment of Counsel (ECF Nos. 43, 52, 54) will be denied.

**B. Default Judgment**

As described in the Procedural History section above, Plaintiff has repeatedly moved this Court for entry of default judgment so that he may recover for the loss of use of his truck and for all other harm he has suffered. For the reasons set forth below, the Court finds that although the clerk properly entered Defendant's default, Plaintiff has nevertheless failed to state a claim upon which relief can be granted, and therefore default *judgment* (and any award of damages) is improper.

    1. Legal Standard

Rule 55 of the Federal Rules of Civil Procedure governs default judgment. Under Rule 55(a), "the clerk must enter the party's default" when "a party against whom a judgment for

affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). After the clerk has entered default, the plaintiff may request the entry of a default judgment. *See* Fed. R. Civ. P. 55(b). If the claim is for a "sum certain or a sum that can be made certain by computation, the clerk . . . must enter judgment for that amount." Fed. R. Civ. P. 55(b)(1). If the claim is not for a sum certain, the plaintiff must apply to the court for entry of a default judgment. Fed. R. Civ. P. 55(b)(2). When considering whether to enter default judgment, a court must exercise sound discretion. *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009). "The moving party is not entitled to default judgment as a matter of right." *Id*. "Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim." *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003); *see Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998). Only after determining that the facts allege a claim does the Court turn to the question of awarding damages. *PharMerica East, LLC v. Healthlink of Va. Shores, LLC*, 2020 WL 877983, at *3 (E.D. Va. Feb. 20, 2020) (citing *J&J Sports Prods., Inc., v. Panana, LLC*, 2014 WL 5454323, at *1 (D. Md. Oct. 24, 2014)).

    2. <u>Failure to State a Claim Analysis</u>

In determining whether the facts alleged state a claim, the Court conducts the same analysis that it would if facing a Rule 12(b)(6) motion to dismiss. *See Getir U.S., Inc. v. Domain Name*, 2023 WL 3061870, at *4 (E.D. Va. Mar. 14, 2023) (citing *GlobalSantaFe Corp.*, 250 F. Supp. 2d at 612 n.3). Thus, under the 12(b)(6) standard, the complaint "must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court will

"assume the facts alleged in the complaint are true and draw all reasonable factual inferences in [the plaintiff's] favor," *Burbach Broad Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002), but conclusory allegations or arguments need not be accepted. *See Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995). As with any other 12(b)(6) analysis, pleadings by a *pro se* plaintiff will be held to a less stringent standard than those drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, the pleadings must still set forth enough facts to state a claim. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

Plaintiff initially framed his claims as for "property damage, theft, and unauthorized use." Compl. 1. In the Amended Complaint, Plaintiff re-characterized his claims as for "unauthorized use, vandalism, [and] stripping of one vehicle" and alleged that NIIC and Central Express "committed fraud with my truck in my name." Am'd Compl. 1. In the Supplement to the Amended Complaint, Plaintiff asserts that he is suing Central Express for having "used, stripped and abandoned [his] truck and filed a[n insurance] claim. . . . [and for] unauthorized use of [his] vehicle." Suppl. Am'd Compl. 7. The Court construes these as attempted claims for conversion, injury to property, and fraud[9] and/or civil conspiracy.

  a. *Fraud Claim*

Addressing Plaintiff's putative fraud claim first, the Court finds that Plaintiff has failed to allege facts that would support the necessary elements of such a claim, and thus has failed to state a claim to relief.

---

[9] To the extent that Plaintiff endeavors to assert a claim for identity theft, *see* Am'd Compl. 1 ("... committed fraud with my truck *in my name*" (emphasis added)), the Court is not aware of any particular statutory or common law basis for such a claim. The federal identity theft statute, 18 U.S.C. § 1028, is criminal in nature and provides no private cause of action or civil remedy. *Rahmani v. Resorts Int'l Hotel Inc.*, 20 F. Supp. 2d 932, 937 (E.D. Va. 1998), *aff'd*, 182 F.3d 909 (4th Cir. 1999). The same is true for Virginia's state identity theft statute. *See* Va. Code § 18.2-186.3.

In Virginia, common law fraud comprises "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party mislead and, (6) resulting damage to the party mislead." *State Farm Mut. Auto. Ins. Co. v. Remley*, 618 S.E.2d 316, 321 (Va. 2005) (internal quotations omitted). When alleging a fraud claim, a party must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), and "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). However, a plaintiff may generally allege conditions of an individual's mind, including "[m]alice, intent, [and] knowledge." *Id*.

Here, Plaintiff has alleged that Central Express coordinated with NIIC to file a fraudulent insurance claim in Plaintiff's name. Am'd Compl. 1; Suppl. Am'd Compl. 7. However, this would constitute fraud on the insurance company, not fraud on Plaintiff, as any material misstatements with respect to Plaintiff's truck or his involvement in filing the insurance claim were made to the insurance company, not to Plaintiff. Plaintiff has not alleged that Central Express made any representations—false or otherwise—to Plaintiff, or that Plaintiff relied on any such misstatements. Moreover, Plaintiff has not provided the essential level of "particularity" to satisfy the heightened pleading standard applicable to fraud claims, particularly with respect to alleging Defendant's state of mind. Thus, Plaintiff has not alleged the necessary elements of fraud and has accordingly failed to state a fraud claim against Central Express under Virginia common law and federal pleading standards.

      b. *Civil Conspiracy Claim*

The Court alternatively reads Plaintiff's allegation that NIIC and Central Express "committed fraud with [his] truck in [his] name" as a civil conspiracy claim. Am'd Compl. 1. Virginia recognizes two causes of action for civil conspiracy: civil conspiracy under the common

11

law and statutory civil conspiracy under Va. Code § 18.2-500.  To state a claim for common law civil conspiracy, a plaintiff must allege that "two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means."  *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 320 (4th Cir. 2012) (quoting *Commercial Bus. Sys., Inc. v. BellSouth Servs., Inc*., 453 S.E.2d 261, 267 (Va. 1995)).  And to state a statutory civil conspiracy claim, an injured party must allege that two or more persons combined, associated, agreed, mutually undertook or concerted together "for the purpose of . . . willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever."  Va. Code Ann. §§ 18.2-499, 18.2-500; *see Shirvinski*, 673 F.3d at 321.

While this conspiracy claim (in either its common law or statutory construction) may appear colorable based on a lenient surface-read of Plaintiff's allegations, Plaintiff's own exhibits rob this claim of "plausib[ility] on its face."  *Twombly*, 550 U.S. 544, 570; *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (establishing that, when conducting a 12(b)(6) analysis, it is proper for courts to "consider the complaint in its entirety," to include documents incorporated into the complaint); *see also Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234–35 (4th Cir. 2004) (where a plaintiff attaches or incorporates a document into their complaint, it is proper to accept the contents of the document(s) over conflicting allegations in the complaint). Specifically, Exhibit 1 to the Amended Complaint clearly lists Plaintiff as the Claimant for the instant insurance claim, which he was, given that he initiated the claim upon NIIC.  *Compare* Am'd Compl. 1 ("I wrote a letter to the insurance company on April 6, 2021, to try and get my truck replace[d]."), *with* Am'd Compl., Ex. 1 ("On April 6, 2021, we received information regarding the above-referenced Claim for damage to your 1999 Freightliner FLD12064T."), *and id*. (listing Robert Weddington as "CLAIMANT").  Further, while Plaintiff points to Exhibit 1 as

12

evidence that NIIC and Central Express "committed fraud . . . in [his] name" due to the fact that the "letter show[s] . . . my name under a claim filed Nov. 1, 2018[,]" Am'd Compl. 1, the letter itself only lists a "Date of Loss" of November 1, 2018, *see* Am'd Compl. Ex. 1.  Again, the letter explicitly references Plaintiff's own letter of April 6 as having initiated the relevant claim.  *Id*. Moreover, the November 1, 2018 date, rather than suggesting a fraudulently pre-filed insurance claim, in fact aligns with the timeframe wherein Plaintiff alleges that Lori Nedd and the Virginia State Police recovered the truck from its abandonment.  *See* Suppl. Am'd Compl. 6 ("In 2018 – 2019 Lori Nedd went to Virginia and retrieved a truck owned by me . . . .").

Accordingly, while Plaintiff does baldly allege that Central Express combined with NIIC to commit fraud, and this resultingly harmed Plaintiff and/or his business interests, the documents incorporated into Plaintiff's own Complaint (again, construing the Complaint collectively as ECF Nos. 1, 3 and 4), rob these conclusory allegations of plausibility.  *See Tellabs*, 551 U.S. at 322–23 ("The inquiry, as several Courts of Appeals have recognized, is whether all of the facts alleged, taken collectively, give rise to a [claim], not whether any individual allegation, scrutinized in isolation, meets [the relevant] standard.").  Thus, the Court concludes that Plaintiff has likewise failed to state a claim for either common law or statutory civil conspiracy.

   c. *Conversion & Injury to Property Claims*

Last but not least, the Court turns to Plaintiff's property damage claims.  These can be read as claims for conversion, *see* Compl. 1; Am'd Compl. 1; Suppl. Am'd Compl. 7 (all generally alleging "unauthorized use" of his truck); *see also* Compl. 1 (also alleging theft), and injury to property, *see* Compl. 1 ("property damage"); Am'd Compl. 1 ("vandalism, [and] stripping of one vehicle"); Suppl. Am'd Compl. 7 (alleging that Defendant "stripped . . . his truck").  Though the facts alleged in the Complaint may support valid theories of conversion and injury to property, the

Complaint in its entirety makes apparent that the relevant statute of limitations has run,[10] and thus Plaintiff has failed to state a claim to relief that is plausible on its face. *See Reid v. James Madison Univ.*, 90 F.4th 311, 318 (4th Cir. 2024) (affirming that any statute of limitations issue is properly analyzed within the 12(b)(6) framework); *see also Tellabs*, 551 U.S. at 322 (instructing that any 12(b)(6) analysis should rest on the "complaint in its entirety," to include "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

"The statute of limitations for a conversion claim in Virginia is five years from the date the cause of action accrues." *Informatics Applications Grp., Inc. v. Shkolnikov* (citing *Bader v. Cent. Fid. Bank*, 427 S.E.2d 184, 187 (Va. 1993) (applying Va. Code § 8.01-243(B) (limitation on actions for injury to property) to conversion claim)). "Under Virginia law, a claim of injury to person or property accrues when the injury is sustained . . . ." *Al-Abood v. El-Shamari*, 217 F.3d 225, 233 (4th Cir. 2000) (citing Va. Code Ann. § 8.01-230 (Michie Supp. 1999)); *see also id*. ("Generally, . . . actions in Virginia do not accrue when the resulting damage is discovered."). Applying this rule, Plaintiff needed to bring any claim arising from Defendant's unlawful taking, use, and damage of Plaintiff's property within five years of his injury—i.e., the loss of his truck

---

[10] The Maryland District Court previously dismissed Plaintiff's claims as to Central Express after finding, *inter alia*, that Plaintiff's claims were time-barred. *See* Md. D. Ct. July 9 Mem. Op. ("Second Md. Op.") 2–4, ECF No. 10. The Fourth Circuit subsequently vacated and remanded, in part after "conclud[ing] that it does not appear on the face of Weddington's complaint that the statute of limitations would bar this action against Central Express, LLC." Judgment, *Weddington v. Nat'l Indem. Ins. Co.*, No. 21-7073 (4th Cir. Feb. 8, 2022) (one-page, per curiam opinion). The Court acknowledges this procedural history but believes that there is room to distinguish its statute of limitations finding from that reached (and vacated) previously.

Specifically, the Court respectfully believes that the Maryland District Court incorrectly applied the statute of limitations for a breach of contract claim, *see* Second Md. Op. 2–3, likely misled by the fact that Plaintiff has dedicated quite a bit of ink to allegations that to focus on the issue of insurance policies, claims, and coverage, and thus contract law. Flowing from that, the Court would agree with the Fourth Circuit that, on the face of the Complaint, it was not apparent that this statute of limitations would have run because there was nothing to suggest that Plaintiff *had* a contract with Central Express, let alone that a breach occurred. As explained more fully *infra*, the Court finds here that Plaintiff's claims against Central Express primarily sound in property law (conversion and injury to property), and therefore the contract statute of limitations is inapposite. When reframed in the proper context, the face of Plaintiff's "Complaint" (collectively considered as ECF Nos. 1, 3, and 4 and any documents incorporated therein, plus matters subject to judicial notice) reveals that Plaintiff's property-law-based claims are indeed barred by the governing statute of limitations.

through the alleged conversion. Considering the Complaint in entirety, *Tellabs*, 551 U.S. at 322, it is apparent that Plaintiff's injury occurred approximately mid-2015. *See* Compl. 1 (". . . this is the first I've seen this vehicle since 2015."); First Md. Op.[11] 5 ("Plaintiff lost contact with his truck on May 5, 2015 . . . . The truck was reportedly towed to an impound lot and then went missing." (quoting Motion to Dismiss, *R&L Global, LLC, et al. v. Nat'l Indem. Co.*, 1:21cv524-CCB (D. Md. Mar. 16, 2021), ECF No. 2 (summarizing Plaintiff's own allegations)); Second Md. Op. 2 ("[Plaintiff] knew of his injury (the loss of his truck) as early as 2015."). Thus, the applicable statute of limitations expired five years thereafter, in or about mid-2020.

Plaintiff's supplemental claim for any property damage that occurred after Defendant's conversion of Plaintiff's property (i.e., the eventual "vandalism" and stripping of Plaintiff's truck) does not extend the applicable statute of limitations period or start a new, distinct period. Additional claims that stem from an original root injury are subject to the original statute of limitations. *See Stone v. Ethan Allen, Inc.*, 350 S.E.2d 629, 632 (Va. 1986) ("[W]here an injury, though slight, is sustained in consequence of the wrongful or negligent act of another and the law affords a remedy therefor the statute of limitations attaches at once." (emphasis omitted) (quoting *Richmond Redev. & Hous. Auth. v. Laburnum Const. Corp.*, 80 S.E.2d 574, 581 (Va. 1954))); *see also id.* ("It is not material that all the damages resulting from the act should have been sustained at that time and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date."). Because Plaintiff alleges that Defendant left his

---

[11] Per *Tellabs*, the Court may properly consider "matters of which a court may take judicial notice" in conducting a 12(b)(6) analysis. 551 U.S. at 322. A court may take judicial notice of filings in other cases. *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("[T]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records."). Courts commonly notice a *pro se* plaintiff's prior cases. *See, e.g., Altizer v. Deeds*, 191 F.3d 540, 542 (4th Cir. 1999). Here, the Court notices the record from earlier in this case, as well as the record and pleadings from Plaintiff's prior related lawsuit, Civil Action CCB-21-524 (*R&L Global, LLC, et al. v. Nat'l Indem. Co.*, 1:21cv524-CCB (D. Md. Mar. 2, 2021)).

vehicle damaged and stripped when Defendant was done converting it to Defendant's own use, the Court finds that these additional injuries were sustained as a consequence of the original injury of conversion. As a result, the same five-year statute of limitations applies and runs concurrent to the statute of limitations for Plaintiff's conversion claim, with expiration in or about mid-2020.

Unfortunately for Plaintiff, he did not file the present suit until April 2021, almost a year after the statute of limitations expired for his property damage claims.[12] Accordingly, the claims are time-barred, and Plaintiff has therefore failed to state a claim as to either conversion or injury to property.

    3. Summation

As Plaintiff has failed to state a claim on any of the theories advanced in the documents collectively construed as his "Complaint," the Court is unable to grant him default judgment. His Motions for Default Judgment (ECF Nos. 44, 52, and 56) will therefore be denied.

**C. Motion to Amend**

Under Federal Rule of Civil Procedure 15(a)(2), a court "should freely give leave" to amend "when justice so requires." The Supreme Court has emphasized that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In accordance with this pronouncement, the Fourth Circuit's policy is to "liberally allow amendment." *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021) (citing *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010)). Thus, "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the

---

[12] The Court finds no prejudice to Plaintiff or other grounds for equitable tolling of the limitations period, given that face of the Complaint makes clear that Plaintiff discovered the role of Central Express in the use and abandonment of the truck well within the limitations period. *See* Compl. 1 (describing Lori Nedd's recovery of the truck and discovery of information related to Central Express "[i]n the beginning of 2019"); Suppl. Am'd Compl. 7 (describing the same, but with timeframe of "[i]n 2018 – 2019").

16

amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). "A proposed amendment is futile when it is 'clearly insufficient or frivolous on its face[,]'" *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019) (quoting *Oroweat Foods*, 785 F.2d at 510), or "if the claim it presents would not survive a motion to dismiss." *Id.* (citing *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995)). As explained below, Plaintiff's proposed amendments are not able to withstand 12(b)(6) scrutiny, and thus amendment would be futile.

Plaintiff's proposed amendments would add three parties to the action: Clinton Perkins (owner of Central Express), Anytime Towing, and "Mr. Johnson" aka "AJ" (owner of Anytime Towing). Mtn. Amend 1, ECF No. 53. Plaintiff alleges that Anytime Towing towed Plaintiff's truck (presumably at the time of or after Plaintiff's arrest) and subsequently released the truck to Central Express, without Plaintiff's authorization and while Plaintiff was actively trying to recover the truck through an intermediary, a Mr. Wayne Garner. *Id.* at 1–2. Plaintiff attempted to report the truck stolen and/or file an insurance claim regarding the same, without success. *Id.* Plaintiff seeks damages for "Anytime Towing and Central Express, LLC [having] deprived Plaintiff of his property[,] lied and manipulated the situation because [Plaintiff is] incarcerated." *Id.* at 2.

To the extent that Plaintiff seeks to simply add Perkins, Johnson, and Anytime Towing as defendants liable for his previously filed conversion and property damage claims, Plaintiff faces the same statute of limitations bar as the Court discussed at length, above. And if Plaintiff is endeavoring to add a new claim for fraud against Perkins, Johnson, and Anytime Towing, he faces a similar bar.

Virginia imposes a two-year statute of limitations for fraud. Va. Code Ann. § 8.01-243(A) ("[E]very action for damages resulting from fraud, shall be brought within two years after the

17

cause of action accrues."); *see also Schmidt v. Household Fin. Corp., II*, 661 S.E.2d 834, 838 (Va. 2008). For fraud claims, the cause of action accrues when the fraud "is discovered or by the exercise of due diligence reasonably should have been discovered." *Schmidt*, 661 S.E.2d 838–39 (quoting Va. Code Ann. § 8.01-249(1)). Accordingly, for Plaintiff's newly added fraud claim to be timely, he must have only just discovered its basis within the two-year period prior to filing the Motion to Amend, i.e., no earlier than October of 2021. Once again, however, Plaintiff's own documentation attached in support of his Motion to Amend prevents this claim from surviving 12(b)(6) scrutiny because it demonstrates that Plaintiff knew of or reasonably should have discovered the alleged fraud as early as 2016, and certainly no later than March of 2021.

According to the NIIC documentation attached to Plaintiff's Motion to Amend, NIIC conducted and kept Plaintiff apprised of an investigation into the alleged theft of Plaintiff's truck from its impoundment at Anytime Towing. Mot. Amend, Ex. 1, ECF No. 53-1. This investigation, coupled with one conducted by Virginia State Police ("VSP"), resulted in a finding that Plaintiff's truck was not stolen; rather, Anytime Towing released the truck to Perkins in mid-July, 2015, after it had been sitting in impound since May of 2015. *See generally id*. The documents show that Plaintiff was advised by a VSP trooper in or about October of 2016 "that this is a civil matter and not a theft[,] so [Plaintiff] will have to deal with this in court with Mr. Perkins." *Id*. at 4. This appears to have been reiterated in January of 2017. *Id*. at 6 ("[VSP] let [NIIC] know that they did not believe that this truck was stolen and that there is a disagreement on its uses and where it sits now, but they have told [NIIC] it is not considered a theft."). On the face of these communications, it appears that Plaintiff was aware of the actions of Anytime Towing, Central Express, Perkins, and Johnson, insofar as their disposition of Plaintiff's truck was concerned. And even if Plaintiff did not receive these documents and NIIC's investigation notes

18

until March 15, 2021, when they appear to have been attached to a reiteration of NIIC's denial of coverage, *see id.* at 1, that still left Plaintiff until March of 2023 to bring his claim for fraud against Anytime Towing, Central Express, Perkins, and Johnson. *See* Va. Code Ann. §§ 8.01-243(A), 8.01-249(1) (allowing two years from date of discovery of fraud to bring action for the same). Nevertheless, Plaintiff did not seek to add this claim or even sue three of these proposed defendants until October of 2023.

Based on when Plaintiff knew or reasonably should have known the facts related to the actions of Central Express, Anytime Towing, Perkins and Johnson with respect to the disposition of Plaintiff's truck following its impoundment, it is apparent that the statute of limitations began to run as early as October of 2016, and no later than March of 2021. It is further apparent that the two-year statute of limitations for fraud claims expired before Plaintiff sought to amend his Complaint to add this claim in October of 2023. As a result, the statute of limitations has run, and Plaintiff is unable to state a claim or otherwise withstand 12(b)(6) scrutiny on this claim, and amendment would thus be futile.[13] The Motion to Amend (ECF No. 53) will accordingly be denied.

### D. Dismissal Pursuant to § 1915(e)

When a plaintiff is granted authorization to proceed *in forma pauperis*, the Court is obligated, pursuant to 28 U.S.C. § 1915(e)(2), to screen the operative complaint to determine, among other things, whether the complaint states a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2) (explaining that "the court shall dismiss the case *at any time* if the court

---

[13] While the Court is sympathetic to Plaintiff's circumstances and the unfortunate fate of his truck following Plaintiff's arrest and imprisonment, the Court cannot on that basis alone ignore the operable statutes of limitations. The Fourth Circuit has made clear that a *pro se* individual's ignorance of the law does not in and of itself warrant tolling of the statute of limitations, as it "is neither extraordinary nor a circumstance external to [an unrepresented prisoner's] control." *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (collecting cases from other circuits asserting the same proposition).

determines that . . . the action . . . fails to state a claim on which relief may be granted" (emphasis added)).  Based on the foregoing analysis, the Court finds that Plaintiff has failed to state any claim on which relief may be granted.  The statute of limitations shortfalls outlined in this Opinion are not capable of cure, and the documentation attached to Plaintiff's pleadings and Plaintiff's previous efforts to amend jointly demonstrate that other efforts to amend to state a claim would similarly be futile.  Accordingly, the Court will dismiss this action pursuant to 28 U.S.C. § 1915, without leave to amend.

## V.  CONCLUSION

For the reasons set forth above, the Court will deny all of Plaintiff's pending motions and dismiss this case, having determined that Plaintiff has failed to state a claim on which relief may be granted.  An appropriate Order shall accompany this Memorandum Opinion.

/s/ RCY
Roderick C. Young
United States District Judge

Richmond, Virginia
Dated: March 1, 2024